**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BFW Liquidation, LLC, | ) | Case No.: 09-00634-BGC11 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| Tiffany Austin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AP No.: 11-00007-BGC |
| | ) | |
| BFW Liquidation, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Background**

The plaintiff filed a complaint against Bruno's (now known as BFW Liquidation, LLC) and Southern Family Markets (formally know as Southern Family Markets Acquisition II LLC) on January 17, 2011.[1] Bruno's filed a motion to dismiss count five of that complaint on February 17, 2011. A.P. Docket No. 6.[2] Southern Family filed a motion to dismiss the entire complaint on February 18, 2011. A.P. Docket No. 9. The plaintiff filed an amended complaint on March 2, 2011. A.P. Docket No. 13. Bruno's filed a motion to dismiss that complaint on March 16, 2011. A.P. Docket No. 17.

After notice and a hearing, on March 18, 2011, this Court granted Southern Family's motion and dismissed it as a defendant. On March 31, 2011, the plaintiff filed a motion to reconsider Southern Family's dismissal.

---

[1] Bruno's Supermarkets, LLC filed a Chapter 11 case in this Court on February 5, 2009. On May 4, 2009, this Court approved the sale of some of the debtor's assets which included 31 retail grocery stores to be purchased by Southern Family Markets.

[2] This motion was held to be moot after the plaintiff filed an amended complaint. See Order entered March 17, 2011. A.P. Docket No. 21.

The current matters before the Court are:

1.    The <u>Plaintiff's Motion to Reconsider Dismissal of Defendant Southern Family Markets</u> filed on March 31, 2011, A.P. Docket No. 27, and heard on April 21, 2001; and

2.    The <u>Defendant Bruno's, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint</u> filed on March 16, 2011, A.P. Docket No. 17, and heard on May 19, 2011.

The plaintiff's attorney Mr. Lee Wendell Loder and the defendant/debtor-in-possession's attorney Mr. John D. Elrod, appeared at both hearings. Mr. Richard Patrick Carmody, the attorney for Southern Family Markets Acquisition II LLC, attended the April 21st hearing.

Both matters were submitted on the pleadings, the records in this adversary proceeding and in Bankruptcy Case No. 09-00634-BGC11, and the arguments and briefs of counsel including. In addition, along with the plaintiff's motion to reconsider, the Court considered the <u>Response By Southern Family Markets To Plaintiff's Motion to Reconsider Dismissal Of Defendant Southern Family Markets</u> (Docket No. 30), and with the defendant BFW's motion to dismiss, the Court considered the <u>Plaintiff's First Amended And Restated Complaint</u> (Docket No. 13) and the <u>Plaintiff's Restated Response in Opposition to BFW Liquidation, LLC f/k/a Bruno's Supermarkets, LLC's Motion to Dismiss</u> (Docket No. 33).

## II. Findings of Fact

Most of the facts necessary to resolve the two pending matters are contained in the Court's records or the plaintiff's amended complaint.

To begin, as noted above, the records in this case show that Bruno's Supermarkets, LLC filed a Chapter 11 case in this Court on February 5, 2009. On May 4, 2009, this Court approved the sale of some of the debtor's assets which included 31 retail grocery stores to be purchased by Southern Family Markets, including the store on Montclair Road in Birmingham, Alabama, the site of the actions complained of by the plaintiff. The plaintiff alleges that it was in that store that someone who had stolen checks from her in 2008, used one of those checks on November 19, 2008. According to her, that check, identified as number 158 in materials attached to her motion to reconsider dismissal of Southern Family, was negotiated at that Bruno's store number 8.

The plaintiff claims in addition that the person who presented the check also presented a drivers license for identification, "that was different from the plaintiff's driver's license." <u>Plaintiff's First Amended & Restated Complaint</u>, Docket No. 13 at 4. The plaintiff alleges further that despite the driver's license discrepancy, Bruno's

2

accepted the check and the other defendant, Southern Family Markets, "verified the same." Id.

The check was later dishonored and returned for insufficient funds. Afterwards, it was referred to, or assigned to, Certegy Payment Recovery Services, Inc. for collection. Certegy then contacted the plaintiff on the defendants' behalf.

In furtherance of her claims against the defendants, the plaintiff alleges that Bruno's and Southern Family reported the bad check to various credit reporting agencies, thus besmirching her credit rating. And finally, that on March 25, 2009, Bruno's swore out a warrant for her arrest. She contends that this warrant caused her arrest on November 18, 2009, even though, according to her, she had notified BFW, through its, "principal check verification service, Certegy check services...," id. at 6, that check number 158 had been stolen from her and she was not the one who negotiated it. The criminal charges against the plaintiff were dismissed on December 12, 2009.

Based on these facts, the plaintiff makes various claims for relief. First, the plaintiff claims that the actions taken and omissions of Bruno's and Southern Family caused her to suffer, "lost wages and benefits, extreme mental anguish, past present and future pain and suffering, past, present and future medical bills, lost profits, permanent injury, damage to her reputation and credit standing, loss of check writing privileges and access to credit, an unlawful arrest, etc." Id. at page 9. She contends further that she is entitled to compensatory damages to compensate her for those injuries and punitive damages because the actions taken and omissions of BFW and Southern Family: (1) violated sections 1681(e)(a) and 1681s-2(a)(1)(A)-(a)(3) of the Fair Credit Reporting Act, 15 U.S.C. §§1681(e)(a), 1681s-2(a)(1)(A)-(a)(3); (2) constituted slander and libel per se; (3) constituted an invasion of her privacy; (4) were negligent, reckless, and malicious; (5) constituted malicious prosecution; (6) constituted false imprisonment; and (7) constituted misrepresentation or fraud.

Second the plaintiff claims that, because of Bruno's maleficent acts, the debt which it owes her is non-dischargeable pursuant to 11 U.S.C. § 523(a)(3) and (a)(6) and she is entitled to have the sale by Bruno's in its Chapter 11 reorganization case of substantially all of its assets to Southern Family set aside.

Third, the plaintiff claims that confirmation of Bruno's plan of reorganization did not, by virtue of 11 U.S.C. § 1141(d)(3), result in the discharge of her debt because Bruno's will not engage in business post-confirmation, the plan provides for complete liquidation of its assets, and it would be denied a discharge under 11 U.S.C. § 727 if it was in chapter 7.

Fourth, the plaintiff claims that she entitled to file a claim or request for administrative expense in Bruno's chapter 11 case even though the applicable bar dates for filing such things have past and she is entitled to have the sale by Bruno's to Southern Family set aside because she did not receive notice of it.

### III. Conclusions of Law

### A.  Plaintiff's Motion to Reconsider
### Dismissal of Southern Family

### 1.  Background

Southern Family's motion to dismiss was based primarily on facts of record in BFW's Chapter 11 case number 09-00634.[3]  Those facts are that Southern Family did not purchase the assets of the Montclair store or acquire the rights to sell anything out of that store until May 4, 2009, after BFW filed bankruptcy and six months or so after the check was written and presented at that store.

At the hearing on Southern Family's motion to dismiss, plaintiff's attorney agreed that Southern Family had not acquired the assets of the Montclair store until May 4, 2009, and that, consequently, it could not have done the things with respect to check no. 158 (dated November 19, 2008) as alleged in her complaint. With that concession, plaintiff's attorney agreed that Southern Family's motion to dismiss should be granted, which it was by order of this Court on March 18, 2011. Docket No. 22.

On March 31, 2011, the plaintiff filed the pending motion asking the Court to reconsider that dismissal. A.P. Docket No. 27. The argument asserted was that counsel had been mistaken in his assessment and concession that Southern Family could not have done what was alleged in the complaint. The support offered was that the plaintiff had discovered evidence through other litigation that Southern Family had actually accepted another of the plaintiff's stolen checks, check number 98, dated July 29, 2009, after Southern Family acquired the assets of the subject store on May 4, 2009. On that basis, the plaintiff concluded not only that Southern Family <u>could have</u> done what was alleged in the complaint, but also that there was evidence that <u>it did</u>.  Check number 98 was also dishonored, and it too was referred to Certegy for collection.

### 2.  The Plaintiff's Arguments

The plaintiff makes three general arguments for reconsideration. Those are: (a) check number 98 proves that check number 158 is actionable; (b) the plaintiff should be allowed to substitute check number 98 for check number 158 if 158 is not actionable; and (c) Southern Family should have intervened on the plaintiff's behalf against BFW in any event.

---

[3] During the course of its bankruptcy case, Bruno's changed its name to BFW Liquidation, LLC.  In order to avoid confusion, it will be referred to as "BFW" hereafter in this opinion.

4

### a. Check No. 158 Is Actionable

The plaintiff wants the Court to allow her to continue her suit on check number 158 because of something she alleges occurred after Southern Family purchased the debtor's assets. At the argument for the motion for reconsideration, plaintiff's counsel appeared to argue that Southern Family's acceptance of and attempt to collect check number 98 <u>after</u> it had acquired the assets of the Montclair store and the right to sell those assets, supports the inference that it also accepted and attempted to collect check number 158 <u>before</u> it acquired the assets of that store and the right to sell those assets. This Court can find nothing in that argument to support that inference.

### b. If Check Number 158 is Not Actionable,
### Check Number 98 Should Be

In her motion, the plaintiff appears to argue that if her allegations against Southern Family of wrong doing are not actionable under check number 158, they should be under check number 98. As such, the plaintiff argues that even without check number 158, with check number 98 her lawsuit against Southern Family is still viable.

The Court disagrees. Simply put, because the plaintiff did not allege in her complaint that BFW had anything to do with check number 98, any controversy between the plaintiff and Southern Family with respect to check number 98 would not have any impact on either BFW, the property of the estate, or the administration of bankruptcy estate. As such, this Court would not have any jurisdiction over that controversy.

### c. Southern Family Should Have
### Intervened on the Plaintiff's Behalf

The plaintiff's motion in this regard does not agree with her complaint. In her motion, the plaintiff argues that because Southern Family purchased the assets of the Montclair store and sold those assets out of the subject store after the sale order was entered on May 4, 2009, Southern Family could have "intervened" to stop BFW from having the plaintiff arrested and prosecuted. She does not, however, include any such "failure to intervene" cause of action in her complaint. Similarly, she does not cite any statute or other legal authority which required or imposed a duty on Southern Family to "intervene" on her behalf to stop BFW from prosecuting her over a check which Southern Family had nothing to do with. And finally, the plaintiff does not cite any authority that would have empowered Southern Family to prevent the prosecution of the plaintiff over something that was none of its business. As such, the Court cannot find any reason to find that Southern Family should have or was required to assist the plaintiff in this regard.

5

### 3. Conclusions on the Plaintiff's Motion to Reconsider

There is nothing in the plaintiff's motion to relieve her from her counsel's accession that Southern Family should have been dismissed from this proceeding. The reason there is not is – her counsel's concession was correct.

The per curiam opinion in Stillwell v. Allstate Ins. Co., 663 F.3d 1329 (11th Cir. 2011) explains, "To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ' Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.' Id." Id. at 1333.

There is nothing in the plaintiff's complaint that states a plausible claim against Southern Family. Therefore, Southern Family should have been dismissed as a defendant. As such, the Court concludes that the plaintiff's motion to reconsider that dismissal should be denied.

### B. BFW's Motion to Dismiss

### 1. Count One – Alleged Violations of the Fair Credit Reporting Act

The plaintiff alleges in Count One of her complaint that the acts and omissions of BFW in causing, "inaccurate and negative information to be reported on the plaintiff's credit report and in other credit databases," violated sections 1681e(a), 1681e(b), 1681k(g), 1681s-2(a)(1)(A), 1681s-2(a)(2), and 1681s-2(a)(3) of the Fair Credit Reporting Act. 15 U.S.C. §§1681e(a), 1681s-2(a)(1)(A)-(a)(3).

As discussed below, the Court finds that, for various reasons, BFW did not violate the Fair Credit Reporting Act. Those reasons are discussed in detail below.

Section 1681e(a) requires a "consumer reporting agency" to take measures to insure that certain information is not included in "consumer reports" and that "consumer reports" are not furnished except for specifically designated purposes.

Section 1681e(b) requires a "consumer reporting agency" to take measures to insure that the information contained in a "consumer report" is accurate.

According to section 1681a(f):

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly

engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The allegations against BFW are that it transmitted information relating to the transaction between it and who it supposed to be the plaintiff to a credit reporting agency. Under the law in this Circuit, that would not make BFW a "consumer reporting agency." According to the decision in Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985), an entity which, "did no more than furnish information to a credit reporting agency" is not a "consumer reporting agency" within the definition of that statute. Moreover, information transmitted by a creditor to a "consumer reporting agency" relating to a transaction between the former and a customer does not constitute a "consumer report." Id.

The reasons BFW was not a "consumer reporting agency" is further defined by the opinion in Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575 (11th Cir. 1988). It includes:

First, where the... [creditor] has reported information based solely on its own experience with one of its customers, the... [creditor] is not acting as a "consumer reporting agency," within the meaning of the Fair Credit Reporting Act, because, inter alia, it has not furnished a "consumer report" as that term is defined in the Act. A "consumer report" does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C.A. § 1681a(d), (f);

Id. at 1578 (parentheticals added).

Hence, under these standards, this plaintiff has failed to state a claim upon which relief can be granted pursuant to either subsection (a) or (b) of 15 U.S.C. § 1681e(a).

In regard to the plaintiff's allegations under subsection 1681k(g), the Court finds that there is no subsection (g) in 15 U.S.C. § 1681k. If the complaint intends subsection 1681k(a), that subsection requires a "consumer reporting agency" which provides "consumer reports" for "employment purposes" to: (a) report matters of public record which are contained in its reports and are likely to be adverse to a consumer's chances of obtaining employment to the consumer when a "consumer report" is furnished to a third-party; and (b) maintain strict procedures to insure that information in its reports regarding matters of public record which are likely to be adverse to a

7

consumer's chances of obtaining employment is complete and up to date. But, once again, since BFW was not a "consumer reporting agency" and the information that it allegedly provided to the credit reporting agency did not constitute a "consumer report," the plaintiff has failed to state a claim under 15 U.S.C. § 1681k upon which relief can be granted.

In regard to section 1681s-2(a)(1)(A), that subsection prohibits a person from furnishing information to a "consumer reporting agency" which that person knows or has reasonable cause to believe is inaccurate. Section 1681s-2(a)(2) requires a person who regularly in the ordinary course of business furnishes information to a "consumer reporting agency," and has furnished information to a "consumer reporting agency" which that person later learns to be inaccurate, to promptly inform the "consumer reporting agency" of that inaccuracy. And Section 1681s-2(a)(3) requires a person who has provided information about a consumer to a "consumer reporting agency" to notify said agency if the consumer disputes the accuracy of that information. However, while those statutes appear to be implicated by the facts alleged by the plaintiff in her complaint, no private right of action exists for redress of violations of those provisions of 15 U.S.C. § 1681s-2(a). Huertas v. Galaxy Asset Management, 641 F.3d 28, 34 (3rd Cir. 2011); Peart v. Shippie, 345 Fed. Appx. 384, 386, 2009 WL 2435211, *1 (11th Cir., Aug. 11, 2009) (unpublished)(cited as persuasive authority); Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002); Grow Financial Federal Credit Union v. Williams, 2011 WL 1336405, *4 (M.D. Fla., April 7, 2011); Quale v. Unifund CCR Partners, 682 F. Supp. 2d 1274, 1281 (S.D. Ala. 2010); Antoine v. State Farm Mut. Auto. Ins. Co., 662 F. Supp. 2d 1318, 1327 (M.D. Fla. 2009).

In fact, the converse is true as, "the statute explicitly bars private suits for violations of this provision." Peart v. Shippie, 345 Fed. Appx. 384, 386, 2009 WL 2435211, *1 (11th Cir., Aug. 11, 2009) (unpublished). Subsection (c)(1) of Section 1681s-2, entitled "Limitation of liability," specifically provides that Section 1681n, which provides for civil liability for anyone who willfully does not comply with the FRCA, and Section 1681p, which provides for civil liability for negligent noncompliance with the FRCA, do not apply to violations of 1681s-2(a). Consequently, as a matter of law, the plaintiff can prove no set of facts that would entitle her to relief against BFW for its alleged violation of 1681s-2(a).

Because the plaintiff has stated no claim upon which relief may be granted for BFW's alleged violations of sections 1681e(a), 1681e(b), 1681k(g), 1681s-2(a)(1)(A), 1681s-2(a)(2), and 1681s-2(a)(3) of the Fair Credit Reporting Act, 15 U.S.C. §§1681e(a), 1681s-2(a)(1)(A)-(a)(3), those claims, contained in Count One of her complaint, must be dismissed and BFW's motion to dismiss granted.

### 2. Count Two – Libel and Slander

The plaintiff alleges in Count Two of her complaint that BFW's false accusations about her given to law enforcement personnel resulted in her being arrested and that its

provision of false information to credit reporting agencies tarnished her credit. She concludes that both constitute libel and slander.

In regard to its statements to law enforcement, BFW counters by arguing that, as a matter of law, its communication to law enforcement was privileged. BFW cites Tidwell v. Winn-Dixie, Inc., 502 So.2d 747, 748 (Ala. 1987), in which the Alabama Supreme Court affirmed the trial court's decision that a store manager had a conditional privilege to tell police that the plaintiff in that case had left his grocery store with items without paying for those items. That information resulted in that customer's arrest.

The Court does not disagree with BFW but recognizes that Tidwell includes a second step that must be considered. As indicated in the decision, the fact that a person's statement was privileged means only that the plaintiff must prove actual malice in order to recover. In other words, the words are only privileged, "if made in good faith and without actual malice." Id. (citations and internal quotation marks omitted). The existence vel non of actual malice is a question of fact which cannot be resolved on a motion to dismiss for failure to state a claim upon which relief may be granted.

Therefore, as to the allegedly false statements made by BFW to law enforcement about the plaintiff, the Court finds that the plaintiff adequately states a claim for relief for defamation.

In regard to the statements BFW allegedly made to credit reporting agencies, BFW did not argue that the plaintiff's allegations about statements it made to credit reporting agencies failed to state a claim upon which relief may be granted. Moreover, the Court's analysis of those allegations indicates that she indeed adequately describes, in Count Two of her complaint, as amended, a claim for defamation against BFW for those statements upon which, if proved at trial, relief may be granted.

Consequently, based on the above, BFW's motion to dismiss the plaintiff's defamation claim regarding allegedly false statements it made to law enforcement and to credit reporting agencies, must be denied.

### 3. Count Three – Invasion of Privacy

The plaintiff alleges in Count Three of her complaint that the allegedly false statements BFW made about her to law enforcement and credit reporting agencies constituted an invasion of her privacy. She reasons that this information disseminated placed her before the public in a false light. The elements of that type of an invasion of privacy cause of action in Alabama are these:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had

9

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Butler v. Town of Argo, 871 So.2d 1, 12 (Ala. 2003)(quoting Schifano v. Greene County Greyhound Park, Inc., 624 So.2d 178, 180 (Ala. 1993)).

According to the plaintiff's complaint, the false information disseminated by BFW was only to law enforcement and the credit reporting agencies and no one else. The question then is whether dissemination of that information to that relatively small group constitutes "giving publicity" for purposes of stating a false light invasion of privacy claim.

The Alabama Supreme Court addressed a similar scenario in Regions Bank v. Plott, 897 So.2d 239 (2004). In that case, thieves stole the plaintiff's checks, forged her signature, and negotiated 130 of the checks at various locations. The plaintiff closed her account before any of the stolen checks could be negotiated. As a result, the checks were dishonored by her bank, and returned to the presenting banks marked "refer to maker," "account closed," "account not found," and "insufficient funds." The holders of the bad checks contacted the plaintiff, who explained the circumstances to them. Many of the holders were dissatisfied and threatened the plaintiff with civil and criminal actions. In fact, warrants were issued for her arrest in several Alabama counties, (although she was never arrested), and several merchants reported adverse information regarding her to various credit reporting agencies. The plaintiff sued her bank for invasion of privacy on the theory that returning the checks with the marks "refer to maker," "account closed," "account not found," and "insufficient funds" somehow constituted a falsehood which placed her in a false light. The jury awarded damages against the bank. On appeal, the Alabama Supreme Court reversed on several grounds. Relevant to the instant case, that court found that only the mark "insufficient funds" could have possibly been false; that checks marked in that matter had only been returned to two presenting banks and two merchants; and that dissemination of that false information to those four entities could not, as a matter of law, constitute the "giving of publicity to a matter concerning another" as required to support a claim for false light invasion of privacy. The opinion included:

In the context of a false-light claim, "giving publicity" is "making a 'matter ... public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' " Ex parte Birmingham News, Inc., 778 So.2d 814, 818 (Ala. 2000)(quoting Restatement (Second) of Torts § 652D, cmt. a. (1977)(emphasis added)). "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a defamation claim. Gary v. Crouch, 867 So.2d 310, 318 n. 6 (Ala. 2003). The "publicity" element is not satisfied by the " 'communicat[ion of] a fact ... to a single person or even to a small group of persons.' " Birmingham News, 778 So.2d at 818 (quoting Restatement (Second) of Torts § 652D, cmt. a. (1977)(emphasis

10

added in Birmingham News; some emphasis omitted)). We hold that the return by a payor bank of one check stamped "insufficient funds" to two presenting banks and two merchants does not "giv[e] publicity to a matter concerning another" within the meaning of the "publicity" element of a false-light claim.

897 So.2d at 245 (emphasis and parentheticals in original).

According to the plaintiff's allegations in the instant case, BFW did not communicate the allegedly false information to the public at large. Instead, it communicated the allegedly false information only to a small group of persons, namely the district attorney's office and an undisclosed number of credit reporting agencies. Such limited publication of that information does not satisfy the "publicity" element of a false-light claim. Therefore, the plaintiff's claim for false light invasion of privacy must be dismissed and BFW's motion to dismiss granted.

### 4. Count Four – Negligence, Malicious Prosecution, and False Imprisonment

#### a. False Imprisonment

Count Four of the plaintiff's complaint is entitled "Negligence/malicious prosecution/ false imprisonment." However, neither the term "false imprisonment," nor the word "false," nor the term "imprisonment," nor any variation of those terms appears in the body of that count. In addition, neither the term "false imprisonment" nor synonymous terminology appears anywhere else in the complaint other than in the title to the plaintiff's Count Four.

The allegations in Count Four are: (1) BFW negligently, recklessly, and wantonly failed to verify the identity of the person who wrote the bad check, which resulted in her being arrested; and (2) BFW lacked probable cause to have her prosecuted.

Under the Alabama Code, "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Code of Ala., 1975, § 6-5-170. Nowhere in Count Four does the plaintiff allege that anyone in BFW's employ ever detained her or otherwise deprived her of her personal liberty. Therefore, the plaintiff has not stated a cause of action for false imprisonment and it is not apparent that she intended to.

In addition, the plaintiff plainly stated in paragraph 10 of her complaint that she was arrested pursuant to a warrant, albeit the warrant was obtained at the instigation of BFW. "The law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person." Ennis v. Beason, 537 So.2d 17, 19 (Ala. 1988). "Under such circumstances, 'neither the arrest nor the subsequent imprisonment is

11

'false,' and, as a consequence, the complaining party's action must be one for malicious prosecution.' " Id. (quoting Blake v. Barton Williams, Inc., 361 So.2d 376, 378 (Ala. Civ. App. 1978)).

Based on the above, the Court finds that the complaint fails to state a claim upon which relief may be granted for false imprisonment and therefore, as to that count, must be dismissed and BFW's motion to dismiss granted.

### b. Negligence, Recklessness, or Wantonness

If the plaintiff intended to state a claim for negligence in BFW's failure to verify the identity of the person who wrote the check, or, more properly, its failure to discover that she did not write the check – that claim must also be dismissed. The prosecution of the plaintiff, which resulted from that so-called negligence, is, according to her allegations, the circumstance in that chain of events which ultimately caused her injury. Consequently, her cause of action is for malicious prosecution, not negligence or its more severe variations, i.e., recklessness and wantonness, in failing to identify the fraudulent check writer. The allegation that a defendant negligently, or recklessly, or wantonly did or did not do this or that, which led the defendant to instigate an unfounded criminal prosecution against the plaintiff, which resulted in injury to the plaintiff, amounts to nothing more than a malicious prosecution claim improperly couched in terms of negligence and wantonness. Ex parte Miller, Hamilton, Snider & Odom, LLC, 942 So.2d 334, 336 n. 4 (Ala. 2006). It is, in effect, "... a claim of negligent prosecution of a civil action [which] is not a cognizable tort claim in this state." Ex parte State Farm Mut. Auto. Ins. Co., 924 So.2d 706, 711 (Ala. 2005).

Based on the above, the Court finds that the plaintiff's allegation that BFW negligently, recklessly, or wantonly failed to ascertain that she did not write the check, therefore, fails to state a claim upon which relief may be granted and must be dismissed and BFW's motion to dismiss granted.

### c. Malicious Prosecution

In contrast, the plaintiff has properly stated a claim for malicious prosecution based on the general language in her complaint. A claim of malicious prosecution requires the plaintiff to show, "(1) that a prior judicial proceeding was instituted by the present defendant, (2) that in the prior proceeding the present defendant acted without probable cause and with malice, (3) that the prior proceeding ended in favor of the present plaintiff, and (4) that the present plaintiff was damaged as a result of the prior proceeding." Delchamps, Inc. v. Bryant, 738 So.2d 824, 831-832 (Ala. 1999).

Taken together, the numerous allegations plead in the plaintiff's complaint relating to malicious prosecution sufficiently state a claim. Those are:

1. BFW initiated the criminal prosecution against her for the bad check (paragraph 10)
2. The prosecution was dismissed (paragraph 12);
3. The plaintiff was injured as a result of BFW's actions (paragraphs 18, 22, 34, and paragraph 2 of the "Prayer for Relief");
4. BFW acted without probable cause in initiating the criminal action (paragraph 27); and
5. BFW's actions in initiating the prosecution were "malicious" (paragraphs 22 and 30).

With these allegations, the plaintiff provided the defendant fair notice of what her claim is and the grounds on which it rests. She has, therefore, successfully stated a claim for malicious prosecution upon which relief may be granted. As to that allegation, BFW's motion to dismiss is due to be denied.

### 5. Count Five – Action to Have Debt Declared Non-dischargeable Pursuant to Sections 523(a)(3) and (a)(6); Action for determination that Debt was not Discharged by Confirmation; Action for Determination that Plaintiff May File a Claim or Administrative Expense Request Despite Expiration of Bar Dates; Action to Set Aside the Sale of the Debtor's Assets

#### a. Action to have Debt Declared Non-dischargeable Pursuant to Sections 523(a)(3) and (a)(6)

The plaintiff's Count Five is entitled "Objection to Discharge/Due Process Violations/FRCP 60(b)." In it she contends that the debt owed her by BFW is not dischargeable by virtue of 11 U.S.C. §§ 523(a)(3) and (a)(6), and complains that she was not able to timely file a complaint for a determination of non-dischargeability because she was not provided notice of the bankruptcy case. In contrast, section 523 is, by its terms, only applicable to debts owed by an "individual debtor:" "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...." 11 U.S.C. § 523(a). "If the debtor is not an individual, no proper question can be raised in a Chapter 11 case as to the dischargeability of a particular debt." Farm Fresh Poultry, Inc. v. Hooton Co. (In re Hooton Co.), 43 B.R. 389, 390 (Bankr. N.D. Ala. 1984). And "[a] corporate debtor is not an individual debtor for the purposes of Section 523." Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.), 863 F. 2d 832, 834 (11th Cir. 1989).

Since BFW is not an individual, the part of Count Five which seeks a determination of non-dischargeability pursuant to section 523 fails to state a claim upon which relief may be granted and, therefore, must be dismissed and BFW's motion to dismiss granted.

13

### b.  Action for Determination that Debt
### was not Discharged by Confirmation

Similarly, in Count Five, the plaintiff seeks a determination that, by virtue of 11 U.S.C. § 1141(d)(3), confirmation of BFW's plan did not result in the discharge of her debt.  That provision of the Bankruptcy Code provides: "(3) The confirmation of a plan does not discharge a debtor if (A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title."  11 U.S.C. § 1141(d)(3).

In her complaint, the plaintiff makes allegations which, if proved to be true, entitle her to a determination that her debt has not been discharged, namely that BFW has ceased to operate and is selling all of its assets.  And it is undeniable that, if this were a Chapter 7 case, BFW would be unable to receive a discharge because it is "not an individual...."  11 U.S.C. § 727(a)(1).

Furthermore, along the same vein, the plaintiff alleges that she failed to receive notice of the bankruptcy case and notice of the claims bar date before the order of confirmation was entered on June 25, 2009.  She has therefore raised a legitimate question as to whether, aside from section 1141(d)(3), the discharge, if any, effected by said order included her debt.  Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.), 863 F. 2d at 835.

Moreover, the criminal action against the plaintiff did not conclude, in her favor, until after BFW's plan was confirmed on September 25, 2009.  A cause of action for malicious prosecution does not accrue until the time for filing a notice of appeal in the underlying case has expired, and, if an appeal is taken, an action for malicious prosecution does not accrue until the appeal has been finally decided.  Barrett Mobile Home Transport, Inc. v. McGugin, 530 So.2d 730, 733 (Ala. 1988).  There being no appeal possible from the dismissal of the underlying criminal action against the plaintiff, her malicious prosecution action accrued when her case was dismissed post-confirmation.  That cause of action does not, therefore, appear to have been discharged by confirmation of the debtor's plan in any event, since section 1141(d)(1)(A) provides that confirmation only discharges "debt[s] that arose before the date of such confirmation...."  Id. (parenthetical added).

Therefore, with respect to her section 1141(d)(3) "cause of action," the plaintiff has stated a claim upon which relief may be granted and BFW's motion to dismiss denied.

14

### c. Action for Determination that Plaintiff
### May File a Claim or Administrative Expense
### Request Despite Expiration of Bar Dates

While much of the remainder of the plaintiff's Count Five is difficult to categorize, it seems apparent that she has adequately stated a case for allowing her to file a proof of claim or administrative expense request. Or in the alternative, she has proved that the present adversary proceeding should act as a timely filed proof of claim or administrative expense request, even though the claims bar date passed on June 19, 2009, and the bar date for filing administrative expense requests expired on June 5, 2009, well prior to this proceeding having been instituted on January 17, 2011.

The plaintiff's reason for not filing a timely proof of claim or administrative expense request is the debtor's failure to provide the plaintiff with either notice of the pendency of the case or notice of the bar dates. Indeed, there is ample authority for the proposition that a claim cannot be disallowed on the basis that it was not timely filed if the creditor did not receive notice of the bar date. "A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.), 863 F.2d 393, 396 (5th Cir. 1989). "Due process and equitable concerns require that when a creditor does not have notice or actual knowledge of a bankruptcy, the creditor must be permitted to file [a claim] tardily when the creditor does so promptly after learning of the bankruptcy." United States v. Cardinal Mine Supply, Inc., 916 F.2d 1087, 1089 (6th Cir. 1990). "This recognition, that the time restrictions imposed by the Bankruptcy Rules for filing proofs of claim are subject to a creditor's right of due process, is well ingrained in bankruptcy jurisprudence." In re Stacy, 405 B.R. 872, 876 (Bankr. N.D. Ohio 2009). "Since the creditor did not have proper or adequate notice of the bankruptcy case, due to the failure of the debtor to properly schedule that creditor, it is appropriate for the Court to allow the late-filed proof of claim." In re Smith, 217 B.R. 567, 568 (Bankr. E.D. Ark. 1998). "[A] debtor cannot contend that a claim is late filed when the debtor failed to give notice to the claimant." In re President Casinos, Inc., 418 B.R. 332, 335 (Bankr. E.D. Mo. 2009). There is also abundant authority for the proposition that a creditor who failed to receive notice of the bankruptcy case, or notice of the claims bar date, must be permitted to tardily file a proof of claim based on "excusable neglect" pursuant to Fed. R. Bankr. P. 9006(b)(1). Equal Employment Opportunity Commission v. Valley Kitchens, Inc. (In re Valley Kitchens, Inc.), 68 B.R. 372, 373-374 (Bankr. S.D. Ohio 1986). See also the many cases which support that conclusion cited in Surette, "What Constitutes 'Excusable Neglect' Under Bankruptcy Fed. R. Bankr. P. 9006(b)(1) Which Will Permit Court to Extend Time for Filing Proof of Claim in Bankruptcy Case - Post-Pioneer Cases," 43 A.L.R. Fed. 2d 177 (2010). Whether the plaintiff is technically a "creditor" or an "administrative expense claimant," the principle remains the same,

that is, her right to payment cannot be eliminated by invocation of a technical bar date of which she did not receive notice.[4]

Consequently, the plaintiff has stated a claim upon which relief may be granted for allowing her to file a claim or request for administrative expense out-of-time, as against the objection that the same was not filed before the bar date, or even before the order confirming the debtor's plan was entered. Therefore, as to this part of Count Five, BFW's motion to dismiss is due to be denied.

### d. Action to Set Aside Sale of the Debtor's Assets

#### 1. Fed. R. Civ. P. 60(b)

Finally, in Count Five, the plaintiff requests, pursuant to Fed. R. Civ. P 60(b), that the order authorizing the sale by BFW of substantially all of its assets, be set aside. Case Docket No. 821, entered May 4, 2009.[5] In contrast, the plaintiff does not allege any of the particular grounds specified in Rule 60(b) for setting aside judgments. She does not allege that the sale order was entered as a result of any mistake, inadvertence, surprise, or excusable neglect; or that she has newly discovered evidence that dictates overturning that order; or that anyone committed fraud, misrepresentation, or misconduct on either her or the Court in connection with the sale or for the purpose of getting the sale accomplished; or that the sale order is void; or that the order has been satisfied, released or discharged, or is based on an earlier judgment that has been reversed or vacated, or that applying it prospectively is no longer equitable.

What the plaintiff does contend is that the acts taken by the debtor against her personally, which form the basis of her defamation, malicious prosecution, or other claims, constitute grounds under 60(b) to set aside the order. She is incorrect. The acts complained of by the plaintiff had nothing to do with, nor did they in any wise result in, influence, or affect, either the sale or entry of the sale order or either the manner in which that order was constituted or the sale was accomplished. Moreover, those acts could not possibly have, and are not alleged to have, influenced or misled the Court into

---

[4] With respect to the events complained of by the plaintiff that allegedly occurred post-confirmation, most pointedly her arrest and prosecution, and dismissal of the criminal charges against her, the orders entered in this case setting bar dates for filing claims and administrative expense requests have no effect on injuries resulting from actions of BFW which took place, and causes of action which accrued to the plaintiff, after those bar dates were established and, a fortiori, after confirmation of the debtor's plan.

[5] Rule 60(b) is applicable to this proceeding and the primary bankruptcy case to which it relates through by Fed. R. Bankr. P. 9024.

entering the sale order or authorizing the sale, or any other party-in-interest in either constructing those orders or agreeing to the sale. Furthermore, the plaintiff does not allege that any misconduct by the debtor prevented her from fully presenting and litigating any objection she may have had to the sale or entry of the sale order. In fact, she does not claim to have had any basis for opposing the sale prior to its being authorized. In addition, Fed. R. Civ. P. 60(c)(1) precludes the plaintiff from raising subsections (1), (2), and (3) of rule 60(b) as grounds for setting the sale aside since over a year had passed from the date the sale order was entered and the present adversary proceeding was filed.

Consequently, the Court finds that the plaintiff has failed to state a claim pursuant to Fed. R. Civ. P. 60(b)(1), (2), (3), (4) or (5) to have the sale order set aside and, as such, that part of Count Five is due to be dismissed and BFW's motion to dismiss granted.

## 2. Failure to be provided notice of the sale

The plaintiff appears in Count Five to contend also that she should be able to have the sale order overturned pursuant to the catch-all provision of Fed. R. Civ. P. 60(b)(6) because she did not receive notice of the bankruptcy case until after the order was entered. Section 363(b)(1) of the Bankruptcy Code provides that, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...." 11 U.S.C. § 363(b)(1)(emphasis added). Fed. R. Bankr. P. 2002(a)(2) provides:

> Except as provided in subdivisions (h), (I), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of... a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice....

Id.

Failure to provide the notice required by that rule is grounds for setting aside a bankruptcy sale in appropriate circumstances. "[A] sale without a required Rule [2002(a)(2)] notice may be set aside." McTigue v. American Sav. & Loan Assoc. Of Florida (In re First Baptist Church, Inc.), 564 F.2d 677, 679 (5th Cir. 1977). "The most common remedy, where adequate notice of sale has not been given, is to set the sale aside or to treat it as voidable, typically at the option of the person who failed to receive notice." Walker v. Lee (In re Rounds), 229 B.R. 758, 765 (Bankr. W.D. Ark. 1999). "Ample authority exists for the principle that sales within the scope of § 363(b)(1), of which no proper notice was provided, may be set aside." Esposito v. Title Ins. Co. of Pa. (In re Fernwood Markets), 73 B.R. 616, 619 (Bankr. E.D. Pa. 1987). "The lack of notice [to creditors] prior to the private sale coupled with an inadequate purchase price

17

justifies setting aside the Agreed Order and reopening the bidding process." In re Donohue, 410 B.R. 311, 316 (Bankr. D. Kan. 2009). "Failure to send notice to the most recent address of record violates due process and results in a sale voidable at the option of the creditor." In re F.A. Potts & Co., Inc., 86 B.R. 853, 859 (Bankr. E.D. Pa. 1988). "The sale, having failed to comply with the procedure required by Rule 6004, Federal Rules of Bankruptcy Procedure [requiring notice pursuant to Rule 2002(a)(2)], is hereby set aside, effective when the sale proceeds are returned to the buyer." In re Langlands, 385 B.R. 32, 35 (Bankr. N.D.N.Y. 2008). "[Debtor-in-possession's] failure to comply with 11 U.S.C. § 363(b) forms an independent basis for voiding the entire Agreement [to sell all of the stock of the debtor corporation]." Command Performance Operators, Inc. v. First Intern. Services Corp. (In re First Intern. Services Corp.), 25 B.R. 66, 71 (Bankr. Conn. 1982). See also Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.), 859 F.2d 1127 (2nd Cir. 1988)(bankruptcy court did not err in nullifying debtor-in-possession's post-petition transfer of substantially all of its assets without notice and a hearing as required by section 363(b)(1)); M.R.R. Traders, Inc. v. Cave Atlantique, Inc., 788 F.2d 816 (1st Cir. 1986)(bankruptcy sale properly set aside where creditor's attorney was not provided notice of sale pursuant to Fed. R. Bankr. P. 2002(a)(2) and creditor offered to pay more for item sold than original purchaser); Wolverton v. Shell Oil Co., 442 F.2d 666 (9th Cir. 1971)(sale to bankrupt properly set aside where creditors were not provided requisite notice of the sale); Mason v. Ashback, 383 F.2d 779 (10th Cir. 1967)(where creditors were not provided notice of trustee's sale, sale should be set aside); Hunt, Ortmann, Blasco, Palffy & Rossell, Inc. v. Jim L. Shetakis Distributing Co. (In re Jim L. Shetakis Distributing Co.), 415 B.R. 791 (D. Nev. 2009)(sale outside ordinary course without notice to creditor may be set aside pursuant to 11 U.S.C. § 549 as unauthorized post-petition transfer of estate property).

Some even say that a sale without the requisite notice is void. "[W]here the transaction is outside the ordinary course of the debtor's business, the debtor may not 'use, sell, or lease' estate property until creditors and other interested parties are given notice of the proposed transaction and the opportunity for a hearing if they object. 11 U.S.C. § 363(b)(1)." Medical Malpractice Ins. Assoc. v. Hirsch (in re Lavigne), 114 F.3d 379, 384 (2nd Cir. 1997). "Because [the debtor] gave no notice of the proposed [transaction] to his creditors, the transaction is null and void if it was beyond the ordinary course of business." Id. "Since no good cause has been shown why notice was unnecessary, the failure of notice will serve to vitiate any sale." Mullins v. First Nat'l Exchange Bank of Va., 275 F. Supp. 712, 723 (D. Va. 1967). "Because the requirements of § 363(b) protect the creditors' interest in the estate's assets, '[t]he usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void.' " In re Koneta, 357 B.R. 540, 544 (Bankr. D. Arizona 2006)(quoting In re Weisser Eyecare, Inc., 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000)). "The usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void." In re Weisser Eyecare, Inc., 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000).

"Since the trustee did not have authority to sell until after notice and a hearing, there was no sale." Murphy v. Malone (In re Century Steel, Inc.), 56 B.R. 268, 270 (Bankr. M.D. La. 1985).

And Chapter 11 sales of substantially all of a debtor-in-possession's assets demands utmost scrutiny with respect to the notice requirements. "The Code "notice" requirements have even greater force in a case like the present, where the order approving the proposed sale authorized a transfer of substantially all chapter 11 estate assets-for present purposes, the functional equivalent of an order confirming a conventional chapter 11 reorganization plan. As such, the order confirming a chapter 11 liquidation sale warrants especial bankruptcy court scrutiny." Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Arms, Inc.), 43 F.3d 714, 720 n.9 (1ˢᵗ Cir. 1994).

Bankruptcy Rule 2002(I), however, provides:

> Notwithstanding the foregoing subdivisions, the court may order that notices required by subdivision (a)(2), (3) and (6) of this rule be transmitted to the United States trustee and be mailed only to the committees elected under § 705 or appointed under § 1102 of the Code or to their authorized agents and to the creditors and equity security holders who serve on the trustee or debtor in possession and file a request that all notices be mailed to them.

Id.

That notice procedure was authorized in this case by order dated March 17, 2009, which provides:

> with respect to all matters for which the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules of the United States District Court for the Northern District of Alabama (the "Local Rules") either (I) authorize the Court to designate or limit the parties entitled to notice or (ii) require notice but do not designate the parties to be served, notice shall be sufficient for the purposes of Debtor's case if served only upon the following list of parties or entities (the "Master Service List") ... c. The twenty (20) largest unsecured creditors or, in the event a creditors' committee is appointed, the members of any such committee or, if counsel is appointed for such committee, counsel for same ... [and] I. Those persons who serve on counsel for Debtor and file with the Clerk of this Court a request that they receive all notices given in this chapter 11 case....

Order, Case Docket No. 145.

Consequently, the plaintiff is in the same situation as the hundreds of other individual creditors in this case, that is, she would not have received individual notice of

19

the sale even if she had been listed in the debtor's creditor's matrix and schedules. Moreover, she may not have been entitled to receive notice of those sales by virtue of Bankruptcy Rule 2002(I) and the March 17, 2009, order.

The problem with that conclusion is of course is that where the plaintiff was not included on the creditor's matrix, she was deprived of the right to request notice of the sale. However, Bankruptcy Rule 2002(a)(2) cannot be construed to require a debtor to be foresighted. By necessity, the rule requires only what is possible, that is, the debtor should list creditors who existed as of the date bankruptcy was filed and those it knew or should have known. Certainly it is not credible to suggest that BFW, under the scenario outlined in the plaintiff's complaint, knew or should have known, either when it filed its case, or when it formulated its creditor matrix, or when it noticed the sale, or when the sale took place, that the plaintiff had acquired or would acquire a cause of action against it. Most of the facts alleged by the plaintiff transpired either immediately before its filing or after bankruptcy.

The check that was ultimately dishonored was written only two and a half months before bankruptcy. The complaint does not specify when the disparaging statements on which the plaintiff's defamation count is based were allegedly made except to recite "2008 to the present" (a two year span). Therefore, some, if not all, of those remarks were communicated after bankruptcy was filed. The warrant was not signed until March 25, 2009, which was also when the plaintiff allegedly called the debtor and told its agent that she was not the author of the bad check. BFW did not acquire knowledge from Certegy until September 15, 2009, that the check had been written by a person other the plaintiff. The plaintiff was not arrested until November 18, 2009. And the criminal action against her was not concluded until December 12, 2009.

In fact, the Court cannot conclude from the plaintiff's allegations that the plaintiff was even a "creditor," as that term is defined in 11 U.S.C. § 101(10). "Creditor" is defined as an, "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...," either when the debtor filed its bankruptcy case, or when it filed its creditor matrix, or when it noticed the sale, or when the sale took place. And if the plaintiff was not a "creditor," she was not entitled to receive notice of the sale by Fed. R. Bankr. P. 2002(a)(2), since that rule requires notice to be sent only to, "the debtor, the trustee, all creditors and indenture trustees ...."

In addition, the fact that a committee of unsecured creditors, as well as many creditors holding substantial claims who had specifically requested and received notice of the sale, actively participated in the sales process and, the Court an conclude that all creditor's interests in the sale were adequately represented by that committee and those creditors. The court in Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F.2d 1012 (7th Cir. 1988) explained:

[A] committee of the principal unsecured creditors had participated actively through counsel in the two hearings before... [the bankruptcy judge] and urged him to approve... [the purchaser's] bid.  Since unsecured creditors are treated equally in bankruptcy ... it was a fair inference that if [the purchaser's] bid was in the best interest of the unsecured creditors represented before... [the bankruptcy judge], it was in the best interest of the remaining unsecured creditors... [who did not receive notice of the sale] as well.

Id. at 1017-1018 (parentheticals added).

Moreover, the plaintiff does not state in her complaint sufficient grounds for setting aside the sale under the particular circumstances of this case.  First, she did not allege in her complaint that she possessed any grounds for opposing the sale which she could have raised had she been notified of the sale before it was authorized. Therefore, even if she had received such notice, she would have not been able to prevent the sale being completed. Second, if her claim (or administrative expense request) is allowed despite being late filed, she will receive in this case all that she would have been entitled to had she been provided prior notification of the sale, and will receive the same treatment as all of the other unsecured creditors or administrative expense claimants who stand on equal footing with her.  Consequently, the plaintiff's failure to receive notice of the sale will not have prejudiced her in any respect.

By contrast, the prejudice that would result to the estate from setting aside the sale, as well as to creditors and the purchaser at the sale, is enormous.  The sale was inevitable and unavoidable because BFW had ceased operating.  Liquidation was the only remaining course of action.  Setting the sale aside would, therefore, necessitate its being done over again with duplication of commensurate costs, time, and effort for no reason and to the benefit of no one.  More importantly, from a practical perspective, it would simply be impossible to undo the sale, reassemble all of the things sold and since resold, and reimburse the buyer's purchase money and other outlays at this late date.

Finally, the plaintiff has cited no authority, and the Court knows of none, which supports the proposition that one creditor, or administrative expense claimant, out of hundreds, who did not receive notice of a sale, may have a sale set aside to the substantial detriment of the estate, the purchaser at the sale, and other creditors and administrative expense claimants for no reason other than lack of notice to him or her. Most of the other several hundreds of creditors listed in the debtor's petition were not provided individual notice either, and the unsecured creditors were actively and diligently represented throughout the sales process by an unsecured creditor's committee as well as a contingent of unsecured creditors who received notice by request. In fact, setting aside the sale in this case now would deprive the estate of the very funds necessary to pay any portion of the plaintiff's claim if it is allowed.  Under

21

those circumstances, it is abundantly clear that the plaintiff's failure to be furnished individual notice of the sale provides no ground for setting it aside.

Equity forbids such an unjust result, and precludes embarking on such an arbitrary, senseless, and futile course of action merely for the purpose of correcting what, if anything, amounts to nothing more than a harmless technical error. <u>See Gekas v. Pipin (In re Met-L-Wood Corp.)</u>, 861 F.2d 1012 (7th Cir. 1988) (collateral attack on sale was not permitted even though the requirements for notice under section 363(b) were not met and not all creditors even had notice of the bankruptcy where most creditors (by volume of credit extended) had received notice of the bankruptcy and a committee of the principal unsecured creditors had participated actively in the hearings leading to the sale which supported a fair inference that if the sale was in the best interest of the unsecured creditors represented at the hearing that resulted in the sale, it was likewise in the best interest of the remaining unsecured creditors who were neither notified of the sale nor represented at the hearing that resulted in the sale).

Consequently, the portion of Count Five of the plaintiff's complaint, which asks that the sale be set aside merely because she did not receive individual notice of it, fails to state a claim upon which relief may be granted and is due to be dismissed and BFW's motion to dismiss granted.

### 6. Count Six – Fraud and Misrepresentation Practiced on Persons other than the Plaintiff

The plaintiff alleges in Count Six of her complaint that:

1. BFW, "concealed and misrepresented the true identity of the check writer and the nature of the check transaction to the Jefferson County District Attorney, to the collection agency and to public credit reporting agencies..."

2. "Said persons relied on these misrepresentations..." and,

3. as a result, "the plaintiff was damaged by being wrongfully arrested and having false, negative information published about her in public court records and private credit reporting agencies."

In contrast, the false statements, according to the plaintiff's complaint, were made to third parties, not her. Truthful information was concealed from third parties, not her. And it was those third parties, not her, who relied on those misrepresentations or concealments, albeit to her detriment.

The court in <u>Bailey v. Rowan</u>, 751 So.2d 504 (Ala. 1999) explained:

Case 11-00007-BGC    Doc 36    Filed 03/26/12    Entered 03/26/12 08:57:01    Desc Main
Document    Page 22 of 23

Under present Alabama law, in order to succeed on a fraud or misrepresentation claim, a plaintiff must establish: (1) a false representation by the defendant concerning an existing material fact; (2) a representation that (a) the defendant knew was false when it was made, (b) was made recklessly and without regard to its truth or falsity, or (c) was made by telling the plaintiff that the defendant had knowledge that the representation was true, when the defendant did not have such knowledge; (3) reliance by the plaintiff on the representation; (4) that the plaintiff's reliance was reasonable under the circumstances; and (5) damage proximately resulting from the plaintiff's reliance.

Id. at 507.

While, in certain limited circumstances, a plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff, the plaintiff must still prove that he or she personally relied on the representation. Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 899 (Ala. 2004). Since the plaintiff has not alleged that she relied on the statements made by BFW to the third parties described in her complaint, she has failed to state a claim for fraud or misrepresentation upon which relief may be granted. Consequently, Count Six of her complaint must be dismissed and BFW's motion to dismiss granted.

A separate order will be entered contemporaneously with this Memorandum Opinion.

Dated: March 26, 2012    /s/Benjamin Cohen
            BENJAMIN COHEN
            United States Bankruptcy Judge

BC:sm

23